**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

JAMES SWENO,

Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant.

Civil No. 02-376 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS**

Brian A. Thompson, DONNELLY LAW OFFICE, 900 Degree of Honor Building, 325 Cedar Street, St. Paul, MN 55101, for plaintiff.

Kevin C. Braley and Stephen P. Lucke, DORSEY AND WHITNEY, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for defendant.

Plaintiff James Sweno filed a claim for long term disability benefits under the Sunshine Biscuits, Inc. ("Sunshine") Long Term Disability Benefits Plan ("the Plan"), an ERISA plan funded through an insurance policy issued by defendant Liberty Life Insurance Company of Boston ("Liberty Life"). Defendant initially paid the benefit, but determined in July of 2001 that plaintiff was no longer entitled to benefits. Plaintiff then filed this action to recover benefits. Both parties have moved for summary judgment, and

FILED MAR 1 0 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

defendant has moved to strike plaintiff's motion on procedural grounds. For the reasons discussed below, the Court grants defendant's motion for summary judgment, denies defendant's motion to strike plaintiff's summary judgment motion, and denies plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff worked for Sunshine as a Sales Representative / Territory Manager for over twenty years. His job included preparing paperwork, coordinating orders, and driving from store to store to make sales calls, stock and move inventory into and within the store, and rotate product.

Plaintiff began experiencing lower back problems in 1989 and the condition worsened in 1992. Plaintiff was diagnosed with spondololisthesis and eventually had two surgeries (one in 1994 and one in 1996) in an attempt to improve his condition. Plaintiff did not report any improvement after the surgeries.

Plaintiff initially applied for total disability benefits under the Plan in August of 1994. Plaintiff's initial claim was approved and he received disability benefits for 24 months. After 24 months, however, the Plan's definition of "total disability" changes from an "own occupation" to an "any occupation" standard. Plaintiff's request for long-term disability was denied under the second definition. Under the Plan, "total disability" or "totally disabled" means during the elimination period and the next 24 months of disability, the insured is:

1. unable to perform all of the material and substantial duties of **his occupation** on a **full-time** basis because of a disability;

    (a) caused by injury or sickness
    (b) that started while insured under this coverage; and

2. after 24 months of benefits have been paid, the insured is unable to perform with **reasonable continuity** all of the material and substantial duties of his own or **any other occupation** for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(Emphases added.)

## The Administrative Record

As part of his application for benefits, plaintiff submitted to a functional capacity evaluation (FCE) on February 16, 2001. A physical therapist, Jina Volhard, completed the functional evaluation and determined that plaintiff could work eight-hours per day at a light level of activity.

Plaintiff's physician, Dr. David Holth, disagreed with Volhard's report. In a letter to defendant dated March 8, 2001, Holth stated that plaintiff would not be able to work eight-hour days and that plaintiff "is able to tolerate light duty, but to work consistently more than four hours daily would be very difficult for him. . . . On average, however, I do feel Mr. Sweno could not tolerate more than four hours of work daily."

Dr. Clay Miller conducted a peer review of the medical record in April 2001 and determined that plaintiff could begin work in four-hour shifts, and gradually increase to an eight-hour day. Miller determined that "the medical records provided do substantiate that the claimant can work a sedentary level of job." He recommended that plaintiff start with four-hour shifts and increase his shifts as tolerated by about an hour per week.

Miller also recommended that plaintiff change positions every 20 minutes and avoid forward bending.

Dr. John Lonstein, who performed plaintiff's back surgeries, evaluated plaintiff on July 10, 2001, in connection with his disability benefits. Lonstein also reviewed the opinions of Miller, Holth and Volhard. In a letter dated August 14, 2001, Lonstein stated that plaintiff "is able to do the kind of work he is currently doing, that is 4 hours of work spread out over an 8 hour day. . . . [h]e cannot put in a set shift, but has to spread his work over eight to ten hours." Lonstein reported that plaintiff was able to work thirty to forty-five minutes at a time and had to change positions and walk around when necessary.

Plaintiff's file was reviewed by a vocational rehabilitation specialist who provided a Transferable Skills Analysis and Labor Market Information Report ("Transferable Skills Analysis"). The Transferable Skills Analysis identified numerous alternative occupations for which plaintiff qualifies and could perform given his limitations. Plaintiff's current employers, Lynda Mass and Jeffery Miller, operate a vocational rehabilitation business. They provided a letter to defendant dated August 2, 2001, which stated their opinion that plaintiff could not work in a full-time position, even if the job were sedentary. Plaintiff has worked for Mass and Miller an average of three to four hours per day since December of 1997. His job entails making telephone calls from his home. Plaintiff claims that he does not complete all four hours of his duties at one time, rather, he spreads the work over eight to ten hours.

## ANALYSIS

### I. Standard of Review for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

In this case, both sides have moved for summary judgment and argue that there are no genuine issues of material fact, although there is dispute about the legal consequences of the undisputed facts. "Where the unresolved issues are legal, rather than factual, summary judgment is particularly appropriate." *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990). This dispute centers on the interpretation of a clause in the Plan, the resolution of which is a legal question. *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564-65 (7th Cir. 1995) ("Summary judgment is particularly appropriate in cases involving the interpretation of contracts.").

## II. Principles of Interpretation of ERISA Plans

### A. Standard of Review

The parties agree that the Court should apply a *de novo* standard of review to review defendant's denial of plaintiff's claim. *See Wilson v. Prudential Ins. Co. of Am.*, 97 F.3d 1010, 1013 (8th Cir. 1996); *Coonley v. Fortis Benefit Ins. Co.*, 956 F. Supp. 841, 848-49 (N.D. Iowa 1997) (applying *de novo* review when parties agree that is the appropriate standard).

### B. Rules of interpretation

Plaintiff's claim depends upon the interpretation of the phrase "reasonable continuity" in the plan. Specifically, if the Court finds that plaintiff, who can work approximately four hours per day, is able to work with "reasonable continuity," he is not "totally disabled" under the terms of the Plan and therefore is not entitled to benefits.

When construing the language of an ERISA Plan, the Court begins by examining the language of the plan documents. *See DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 816 (8th Cir. 1988). In this case, the Plan does not define "reasonable continuity." Where terms in ERISA insurance policies are undefined, the Court should interpret them in an ordinary and popular sense, as would a person of average intelligence and experience. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990); *see also Wilson*, 97 F.3d at 1013 (holding that plainly stated terms in ERISA policies should be accorded their ordinary meaning). Each provision in the Plan should be construed consistently with the others "so as to render none of them nugatory . . ." *Wilson*, 97 F.3d at 1013. Ambiguities are construed against the drafter only if, after applying ordinary principles of construction, giving language its ordinary meaning, and admitting extrinsic evidence, ambiguities remain. *Delk v. Durham Life Ins. Co.,* 959 F.2d 104 (8th Cir. 1992).

**C. Construction of "Reasonable Continuity"**

"Continuity" according to the Webster's College Dictionary, 1991, means "the state or quality of being continuous." "Continuous" is defined as "uninterrupted in time; without cessation." *Webster's College Dictionary* 295 (1991). A similar description of "continuity" is found in Roget's II The New Thesaurus: "Existing or occurring without interruption or end" and synonyms offered include "ceaseless, constant, continual, endless . . . nonstop." *Roget's II The NewThesauras* 205 (3rd Ed. 1995).

The commonsense or ordinary meaning of "continuity" clearly has a temporal component. The Court interprets "reasonable continuity" therefore as the ability to work

for some "reasonable" time in an uninterrupted or nonstop fashion. For example, the ability to work with "reasonable continuity" might be the ability to work an hour nonstop, and then take a break, and then resume working. "Reasonable continuity" must have a lower limit, however. For example, if a claimant could work only a few minutes, and then required a lengthy break, that claimant would not be able to work with "reasonable continuity."

This construction of "reasonable continuity" is consistent with other sections of the Plan. "Total disability" is first defined with reference to a "full-time" basis. After 24 months of such "total disability," however, the Plan changes the "full-time" reference to one of "reasonable continuity." It is clear by this change that "reasonable continuity" means something distinct from, and less than "full-time" employment.

A comparison of the "total" and "partial" disability clauses also supports the Court's construction of "reasonable continuity." According to the Plan, partial disability or partially disabled means that the insured is:

> (1) able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on a full-time or a part-time basis; or
>
> (2) able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis.

To qualify for partial disability benefits, the participant must be earning less than 80% of his predisability income at the time partial disability employment begins.

Plaintiff has been working part time, therefore, he meets the definition of "partially disabled" as provided in the plan.[1] The Plan clearly distinguishes between partial and total disability, and the Court should not construe the Plan so as to render the distinction meaningless. A reasonable plan participant would understand that the qualifications for "total disability" are more stringent than those for "partial disability." Assuming the income restriction is met, a participant able to work part-time nonetheless qualifies as "partially disabled." It follows then, that a participant able to work part-time is not "totally disabled" as defined by the Plan. Any other interpretation would obliterate the distinction between partial and total disability. The Court is also guided by a recent Eighth Circuit opinion in which a participant who was able to work part-time was held able to "continuously perform" substantial and material duties of any occupation, and thus did not qualify for total disability benefits under ERISA. *Bond v. Cerner Corp.*, 2002 WL 31465893 (8th Cir. Nov. 6, 2002).

**D. Application to Plaintiff's Restrictions**

The evidence in the administrative record indicates that plaintiff is able to work in four-hour shifts, so long as he changes positions frequently. Because he is able to work part-time, plaintiff cannot be deemed "totally disabled." The medical recommendation that plaintiff move around or change positions every 30 to 45 minutes does not mean that he is unable to perform all the material duties of any occupation with "reasonable continuity." In fact, several occupations listed in the vocational assessment allow for

[1] Plaintiff is no longer eligible for such benefits because partial disability is available only for 36 months.

frequent changes of position, and occasional walking. Plaintiff has simply not shown that he cannot work with "reasonable continuity" even if the Court interprets that term as favorably as possible for plaintiff.

Plaintiff urges the Court to consider his actual current earnings as evidence of his earning capacity and argues that because those earnings are a small percentage of his predisability income, he should be found to be totally disabled.[2] The Court rejects this argument. The Plan's "total disability" definition, unlike the partial disability definition, makes no reference to predisability or comparative income. Further, the "any occupation" language in the total disability definition indicates that the participant need not be able to find an occupation with similar duties or salary — it only requires that the participant be able to perform with reasonable continuity the material and substantial duties of any other occupation for which he is or could become qualified. Although plaintiff is not required to prove that he is absolutely helpless, this "any occupation" standard is not demanding. *See Davis v. American General Life & Acc. Ins. Co.*, 906 F. Supp. 1302, 1310 (E.D. Mo. 1995); *see also, Brigham v. Sun Life of Canada*, 317 F.3d 72, 86 (1st Cir. 2003) (finding paraplegic not "totally disabled" and noting that "the hurdle plaintiff had to surmount, establishing his inability to perform any occupation for which he could be trained, was a high one"); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994) ("any occupation" standard not demanding even where insured was an

---

[2] As part of this argument, plaintiff suggests that the Court adopt the presumption applied in Minnesota Worker's Compensation cases that actual post-injury earnings create a presumption of earning capacity. *See Borchert v. American Spirits Graphics*, 582 N.W.2d 214 (Minn. 1998). The Court declines to adopt such a presumption: "State common law theories are generally not applicable to claims for benefits under ERISA." Ronald J. Cooke, *ERISA Practice & Procedure*, § 8.8.

older man (65 years-old) with only a high school education); *McKenzie v. General Tel. Co. of California*, 41 F.3d 1310, 1317 (9th Cir. 1994) (the "'any occupation' standard is not demanding"). *But see, Torix v. Ball Corp.*, 862 F.2d 1428, 1431 (10th Cir. 1988) (any occupation standard met where claimant showed an "inability to follow any occupation from which [the claimant] can earn a **reasonably substantial** income" (emphasis added)); *Helms v. Monsanto Co.*, 728 F.2d 1416, 1420 (11th Cir. 1984) (same).

Plaintiff also urges the Court to disregard the Transferable Skills Analysis, and argues that because no specific jobs were identified, the Transferable Skills Analysis was speculative. Again, the Court declines to adopt plaintiff's argument. Unlike Minnesota worker's compensation law, there is no requirement under ERISA that the insurer identify a specific job for claimant. *See McKenzie v. General Telephone Co. of California,* 41 F.3d 1310, 1317 (9th Cir. 1994); *Block v. Pitney Bowes,* 952 F.2d 1450, 1455 (D.C. Cir. 1992) (holding that there is no per se requirement that the plan administrator ensure the availability of an alternate job before terminating benefits); *Duhon v. Texaco,* 15 F.3d 1302, 1308-09 (5th Cir. 1994) (same); *Goldammer v. Aid Ass'n for Lutherans,* 747 F. Supp. 1366, 1368-69 (D.S.D. 1990).

In sum, because plaintiff is able to work up to four hours per day, he is able to perform with reasonable continuity all of the material and substantial duties of some occupation. Therefore, he does not qualify for "total disability" benefits and defendant is entitled to summary judgment. For the same reasons, plaintiff's motion for summary judgment is denied. Because the Court denies plaintiff's motion on the merits, the Court need not address defendant's motion to strike the motion on procedural grounds.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment [Docket No. 26] is **DENIED**.

2. Plaintiff's Motion for Summary Judgment [Docket No. 20] is **DENIED**.

3. Defendant's Motion for Summary Judgment [Docket No. 22] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 10, 2003
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge